## J. I. Case Threshing Machine Company *v.* Souders.

[No. 7,312. Filed October 26, 1911.]

1. CONTRACTS.—*Liquidated Damages.*—A contract that fixes a certain sum as liquidated damages for its breach is valid, where such amount is reasonably proportionate to the actual damage sustained. p. 505.

2. CONTRACTS.—*Liquidated Damages.—Penalties.—Directing Verdict.*—A provision in a contract for the sale of a threshing outfit that "in consideration of the expense incurred by the company in soliciting, investigating and taking this order, the purchaser promises and agrees to pay * * * fifteen per cent of the price * * * in case he should cancel the order or decline to accept the machinery," constitutes a penalty, and is

invalid, where the expenses incurred consisted merely in taking defendant's order and in mailing some letters asking as to defendant's responsibility, the expenses being confined solely to those mentioned in the contract; and, in an action for such per cent, a verdict was properly directed for defendant. p. 507.

From Superior Court of Tippecanoe County; *Henry H. Vinton,* Judge.

Action by the J. I. Case Threshing Machine Company against Frank T. Souders. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*Edwin P. Hammond, William V. Stuart* and *Dan W. Simms,* for appellant.

*Edgar G. Collins,* for appellee.

ADAMS, J.—Appellee, who was defendant below, purchased a threshing outfit from appellant, the terms being evidenced by a written contract. The only part of the contract involved in this appeal is the following stipulation:

"In consideration of the expense incurred by the company in soliciting, investigating and taking this order, the purchaser promises and agrees to pay all freight charges on said machinery from the factory, and fifteen per cent of the price above stipulated in cash, in case he cancels this order or declines to accept said machinery."

The purchase price of the machinery was $2,475. Appellant shipped and offered to deliver the machinery to appellee, who declined to receive it, and this action was brought to recover the sum of $371.25, being fifteen per cent of the purchase price, and the further sum of $21.60, the amount of freight paid upon the shipment. All proof of freight charges paid by appellant was withdrawn from the jury at the close of the evidence. The court then gave to the jury a peremptory instruction, directing a verdict for appellee, and entered judgment on the verdict that appellant take nothing by its action, and that appellee recover his costs. Appellant filed its motion for a new trial, the over-

ruling of which motion constitutes the only error assigned and relied on for reversal.

The only question presented to this court and argued by counsel, is whether the agreement heretofore set out constitutes a claim for liquidated damages, or whether it provides for the payment of fifteen per cent of the purchase price as a penalty. Appellant contends that if the stipulated damages are to be held as liquidated damages, and not as a penalty, then the court invaded the province of the jury in giving the peremptory instruction. Appellee admits that this is strictly true, but says that the construction to be given the stipulation for damages is one of law for the determination of the court, and as the court properly interpreted the law, no error resulted from giving the peremptory instruction.

1. Whether the amount stipulated in a contract to be paid by a party upon failure of performance is to be treated as liquidated damages, or as a penalty, has been a fruitful source of litigation, and the subject of much judicial interpretation. Certain general rules are recognized as controlling, but when applied to particular cases, the question becomes one of great difficulty, and the authorities are not in full accord. The general rule governing the subject is laid down in 1 Sedgwick, Damages (8th ed.) §405, as follows: ''Whenever the damages were evidently the subject of calculation and adjustment between the parties, and a certain sum was agreed upon and intended as compensation, and is in fact reasonable in amount, it will be allowed by the court as liquidated damages. This rule will be found to be applicable to all contracts, and really involves the consideration of the subject in the three following aspects—that of the intent of the parties; that of the reasonableness of the contract, and that of the weight allowed by the court to the language employed.'' The same authority (1 Sedgwick, Damages [8th ed.] §406), on the question of intention of the parties, says: ''Courts will not

506    APPELLATE COURT OF INDIANA,

J. I. Case, etc., Mach. Co. *v.* Souders—48 Ind. App. 503.

go outside the contract to ascertain the intention of the parties in entering into it. To do this would often be to violate the elementary maxim that parol evidence cannot be introduced to vary or control a written instrument, and, accordingly, it is well settled that the character of the agreement is a matter of law to be decided by the court upon a consideration of the whole instrument.''

In 1 Sutherland, Damages (3d ed.) p. 721, it is said: ''The trend of judicial thought and action on the subject is well and frankly expressed by Justice Marshall of the Wisconsin court: 'The law is too well settled to permit any reasonable controversy in regard to it at this time, that where parties stipulate in their contract for damages in the event of a breach of it, using appropriate language to indicate that the damages are agreed upon in advance, and such damages are unreasonable considered as liquidated damages, the stipulated amount will be considered to be a mere forfeiture or penalty and the recoverable damages be limited to those actually sustained. While courts adhere to the doctrine that the intention of parties must govern in regard to whether damages mentioned in their contract are liquidated, they uniformly take such liberties in regard to the matter, based on arbitrary rules of construction, so called, as may be necessary to effect judicial notions of equity between parties, guided of course by precedents that are considered to have the force of law, sometimes calling that a penalty which the parties called stipulated damages, where otherwise an unconscionable advantage would be obtained by one person over another.' '' See, also, *Seeman* v. *Biemann* (1900), 108 Wis. 365, 84 N. W. 490.

In this State, many cases are reported on the subject of liquidated damages. In the case of *Jaqua* v. *Heddington* (1888), 114 Ind. 309, it is announced as a general rule, that ''where the sum named is declared to be fixed as liquidated damages, is not greatly disproportionate to the loss that may result from a breach, and the damages are not measure-

able by any exact pecuniary standard, the sum designated will be deemed to be stipulated damages." In the case of *Mondamin, etc., Dairy Co.* v. *Brudi* (1904), 163 Ind. 642, it is said: "The rule generally affirmed by the authorities is that where it is agreed by the parties that the sum or rate fixed in a contract shall be liquidated damages, and the case is one in which they are at liberty so to agree, such an agreement must stand and control, unless it is inconsistent with other parts of the contract, or is unreasonable or unconscionable, in view of the probable damages which may flow from a breach of such a contract." See, also, *Merica* v. *Burget* (1905), 36 Ind. App. 453; *Chicago, etc, R. Co.* v. *McEwen* (1905), 35 Ind. App. 251; *Bird* v. *St. John's Episcopal Church* (1900), 154 Ind. 138. The authorities are so numerous, and the decisions predicated on such a variety of facts, that it would unduly extend this opinion to give citations from other states. Many cases are collected in 13 Cyc. 89, and also in the notes to the case of *Condon* v. *Kemper* (1891), 13 L. R. A. 671.

It is insisted by appellant that the damages incident to the breach of this contract are not limited to the elements named, but include all consequential damages grow-

2. ing out of the failure to accept the machinery, and must have been contemplated by the parties at the time the contract was executed. This cannot now be considered an open question. In the case of *J. I. Case Threshing Mach. Co.* v. *Fronk* (1908), 105 Minn. 39, 117 N. W. 229, a contract, identical with this one, was construed by the supreme court of Minnesota, and held to be limited by the language of the contract to "expenses incurred in soliciting, investigating and taking this order." The expenses being out of proportion to the actual damage suffered by plaintiff, the amount provided for was held to be a penalty. The court said: "Applying the rule to the case at bar, we have no difficulty in reaching the conclusion that the amount stipulated by the terms of this contract is flagrantly out of

508 APPELLATE COURT OF INDIANA,

J. I. Case, etc., Mach. Co. *v.* Souders—48 Ind. App. 503.

proportion to the actual damages suffered by plaintiff in the respects for which compensation was intended, as indicated by the language of the contract, viz., for the expense incurred 'in soliciting, investigating and taking this order,' and should therefore be held a penalty. The parties by their language clearly show an intention to provide compensation to plaintiff for the expense incurred by it in procuring and accepting the order; and in the light of the evidence offered on the trial it is beyond question that the sum of $450, being fifteen per cent of the purchase price of the machine, greatly exceeds any possible expense the company might have incurred in that respect. We have no right to go beyond the contract, and speculate upon the question whether the company might not have incurred expenses in other respects. The contract furnishes the data for what compensation was intended to be made, and the parties are necessarily limited to their written agreement. We do not, therefore, consider the many matters which counsel for plaintiff suggest the company might have taken into consideration in exacting this stipulation. Confining the question to the terms of the contract, and considering the stipulated damages to have reference, as the contract speaks, to expenses incurred in 'soliciting, investigating, and taking' the order, the question is free from serious doubt.'' At the hearing of the case at bar, it was shown that the appellee went to LaFayette, sought an interview with appellant's agent, and gave the order, which was sent at once to the state manager at Indianapolis. Inquiries concerning the financial condition of appellee were addressed to banks and business men at LaFayette and Battle Ground, to which favorable replies were received. The order was then accepted, and forwarded to the home office at Racine, Wisconsin. This was the extent of the work shown to have been done in soliciting, investigating and taking the order.

Upon the trial, appellant directed all its proof to showing full performance of the contract by it, and a breach

thereof by appellee. No proof of actual damage was offered, for the evident reason that if the damages were stipulated in advance by the parties, as contended by appellant, the amount so agreed upon constituted a positive debt for a fixed amount, and excluded evidence of actual damages. It was, therefore, the duty of the trial court, if satisfied that the contract was for liquidated damages, to submit to the jury only the controverted question of the breach; but, if satisfied that the damages provided for in the contract constituted a penalty, it was the duty of the court to instruct the jury to find for appellee. Since the question of freight charges was taken out of the case, there was no error in giving to the jury the peremptory instruction.

The judgment is affirmed.